1
2
3
4
5
6                   IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8   FRU-CON CONSTRUCTION CORPORATION,

9           Plaintiff,                    CIV. NO. S-05-0583 LKK GGH

10          vs.

11
    SACRAMENTO MUNICIPAL                   ORDER
12  UTILITY DISTRICT, et al,

13          Defendants.
    _____/

14

15          Previously pending on this court's law and motion calendar for May 25, 2006

16  were plaintiff Fru-Con's motion to compel and defendant Sacramento Municipal Utility

17  District's motion for protective order.  Brian Becker and Steven Cohn appeared for Sacramento

18  Municipal Utility District ("SMUD").  W. Charlie Lee and Jennifer L. Dauer McCready appeared

19  for Fru-Con Construction Corporation ("Fru-Con").  Having reviewed the joint statements and

20  heard oral argument, the court now issues the following order.

21  BACKGROUND

22          This case concerns a multi-million dollar contract between SMUD and Fru-Con to

23  construct Phase I of the Cosumnes Power Plant Project ("Project") and the alleged breach of

24  contract by SMUD, including but not limited to, failure to timely make progress payments,

25  failure to provide needed construction details such as complete drawings, failure to extend

26  deadlines, failure to issue change orders, and wrongful termination of the contract.  In addition to

1

1  breach of contract as alleged in Count I, Fru-Con also alleges breach of implied covenant of good

2  faith and fair dealing (Count II), breach of implied warranty of correctness of plans and

3  specifications which Fru-Con claims were not accurate or sufficient (Count III), value of unpaid

4  construction work, labor and materials (Count V), and breach of statutory duty to make prompt

5  payment under the California Public Contract Code (Count VI).[1]

6        SMUD answered, in essence denying all claims, and counterclaimed for "...

7  declaratory relief to establish that it [SMUD] properly terminated Fru-Con's right to proceed and

8  perform further work under the Contract....penalties and costs as allowed under the California

9  False Claims Act and seeks damages for negligent conduct [apparently involving violation of

10  environmentally based laws and regulations]..."

11        Based on alleged delays in the Project, the parties in January, 2005 were working

12  on a proposed global change order which would pay Fru-Con at least an additional $7.1 million

13  and give it a three month extension on the Project.  Before the change order was agreed upon or

14  finalized, SMUD terminated the contract on February 11, 2005.  According to Fru-Con, the party

15  desiring the depositions of SMUD Board Members, Fru-Con learned that the Board met in a

16  closed session on January 18, 2005 where the Board authorized the negotiation of the global

17  change order.  If the global change order failed, the Board authorized SMUD to terminate its

18  contract with Fru-Con.  Fru-Con acknowledges that the Board members also received

19  information from twice monthly public meetings and other information such as presentations to

20  the Board.  SMUD, on the other hand, indicates that decisions concerning the global change

21  order negotiation and SMUD's termination of Fru-Con are matters of public record, and that no

22  Board member has first hand knowledge regarding Fru-Con's performance.

23  \\\\\

24  \\\\\

25

26      [1] Count IV alleges professional negligence against Utility Engineering Corporation only, which is not involved in the instant dispute.

1  DISCOVERY DISPUTE ISSUES

2          Both the Motion to Compel (Fru-Con) and the Motion for Protective Order

3  (SMUD) involve the identical issue:  whether it is appropriate for Fru-Con to depose all the

4  SMUD Board of Directors.  The Motion to Compel has been brought on somewhat shifting sands

5  in that the notice of deposition(s) clearly sought the mental thought processes of Board members

6  in making the decisions which they did; however, Fru-Con has retreated in the motion process by

7  asserting that it only desires to understand the facts which were presented to the Board members,

8  and by whom and where, but not the thought processes utilizing the presented facts.  Fru-Con

9  will be held to its latter, retracted position.

10         SMUD generally opposes the motion to compel on the grounds that its Board

11 members are high ranking governmental officials whose depositions generally should be avoided,

12 and by questioning the probative value of depositions of Board members who did not have

13 personal knowledge of events culminating in grounds to terminate the contract, but whose

14 knowledge stemmed from hearsay reports.

15 DISCUSSION

16    I.  Choice of Law

17         Because the subject matter jurisdiction for this action is based on diversity of

18 citizenship, the court must ascertain the appropriate law, federal or California, for discussion of

19 the issues.  Generally, in this diversity action, questions of substantive law are governed by state

20 law.  Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136 (1965).  Thus, for example, the substantive

21 law regarding privileges is found in state law.  Pagano v. Oroville Hospital, 145 F.R.D. 683, 687

22 (E.D.Cal. 1993).[2]  See also First Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D.

23 574, 576 (N.D. Cal. 1995); Bank of the West v. Valley Nat'l Bank of Ariz., 132 F.R.D. 250, 251

24

25         [2] Despite the observations in a few cases that Pagano had been implicitly overruled by
   the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling
26 ever took place.

3

1   (N.D. Cal. 1990).  However, matters going to the procedure for invocation of such privilege, e.g.,

2   preparation of privilege logs, are entirely federal in nature.  Eureka Financial Corp v. Hartford

3   Acc. & Indem. Co. 136 F.R.D. 179, 182; see Fed. R. Civ. P. 26 (b)(5).  "Though a federal court

4   in a diversity action is to apply the substantive law of the forum in which it sits, discovery, as a

5   procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and

6   state discovery practices are irrelevant.  See 8 Wright & Miller, Federal Practice and Procedure:

7   Civil § 2005 (1970)."  American Ben. Life Ins. Co. v. Ille, 87 F.R.D. 540, 542 (D.C. Okl. 1978).

8   Standards for determination of relevance are federal matters.  See Fed. R. Civ. P. 26(b).

9          Thus, the issues in this discovery dispute are governed by federal law.

10  Determination of "how high is high ranking" and how probative is prospective testimony so as to

11  permit or prohibit depositions does not involve questions of privilege.  Rather, the issue

12  essentially involves the Rule 26(b)(2) procedural standards for determining whether a protective

13  order is warranted under the circumstances.  Whether governmental officials' deposition should

14  not be permitted is essentially an inquiry under Rule 26(b)(2) determining whether the burdens of

15  the requested discovery outweigh the probative value of such discovery – superimposed upon a

16  general reluctance in federal law to divert public officials away from their primary public duties

17  (or constantly bedevil former governmental officials with litigation process directed to their

18  previous public decisions).  And, the higher placed the official, the more the law exhibits

19  reluctance.  The matter, therefore, is not one of evidentiary "privilege," but one of practical

20  litigation procedure.[3]

21  \\\\\

22  \\\\\

23

24          [3]  In determining whether sufficient probative value exists for the deposition, one may
    look at the areas of testimony which might warrant invocation of privilege – the more areas
25  prohibited, the less likely remaining testimony will be sufficiently probative.  However, this
    review of possible privileged areas of testimony does not turn the issue of taking the depositions
26  per se into one of substantive state law.

1        II.  <u>Whether Board Members are High Ranking Officials and Possess Information Not</u>

2    <u>Available Elsewhere</u>

3           Fru-Con claims the Board members have significant knowledge of several issues

4    in this case, including Fru-Con's performance and termination from the Project, Fru-Con's

5    progress, potential resolution of outstanding delay and cost issues via a global change order and

6    its negotiations, contract terms, alleged breaches, Project funding decisions, and SMUD's

7    decision to terminate Fru-Con.  Fru-Con argues that this discovery is highly relevant and cannot

8    be obtained elsewhere.

9           SMUD contends that as high ranking officials, its Board members are protected

10   from deposition because the information Fru-Con seeks is either available from a firsthand

11   source, or that meeting minutes and audio/video recordings of the meetings are available for

12   review, that votes are public record, and factual information underlying the votes is discoverable

13   more directly.  SMUD represents that it offered to make one Board member available for

14   deposition, Bill Slaton, the President of the Board in 2004 and 2005.  Fru-Con rejected that

15   proposal, claiming (without support) that each board member possessed unique knowledge which

16   was obtained in different ways.

17          At the outset, it is noted that high ranking government officials should not be

18   haled into court for matters about which they have no personal knowledge unless there is no

19   alternative source for the information or less burdensome means.  <u>See</u> <u>Kyle Engineering Co. v.</u>

20   <u>Kleppe</u>, 600 F.2d 226 (9th Cir. 1979) (finding heads of government agencies not normally subject

21   to deposition); <u>Warzon v. Drew</u>, 155 F.R.D. 183, 185 (E.D. Wis. 1994) (noting that "before the

22   involuntary depositions of high ranking government officials will be permitted, the party seeking

23   the depositions must demonstrate that the particular official's testimony will likely lead to the

24   discovery of admissible evidence and is essential to that party's case, [citation omitted] ... [and]

25   the evidence must not be available through an alternative source or via less burdensome means").

26   In other words, these officials should be able to perform their duties without constant interference

by past problems which led to litigation.  Both parties cite to this court's prior decision of <u>Estate of Martin</u>, 2005 WL 2030565 (E.D. Cal. 2005), wherein this court cited the above law and ordered examination *at trial* of the former California Secretary of the Department of Veterans Affairs, and one out of four board members.  However, while the general observations on the law in that case are helpful, the result of the case was also driven by the specific facts of that case including past representations of witness availability and evidence production/availability problems.

The court does not view the SMUD officials here as sufficiently high ranking such that the law would impose a general prohibition on their depositions.  Federal or state-wide highly placed officials are not involved here.  Rather, SMUD is a local agency without cognizance over general governmental matters.  SMUD does not "pass laws," or generally execute the laws passed by the Legislature.  SMUD is more analogous in many ways to a private corporation with a board of directors executing a specific commercial mission than it is to a governmental executive or legislative body.  Cases involving officials who would generally be thought to hold "higher" positions have been found not to be high ranking enough for a presumptive deposition ban.  The court is not finding that the SMUD officials are entitled to no consideration of their status as government officials; however, their status does not weigh heavily in the determination of whether the Board members depositions can be taken.  <u>See</u> <u>Detoy v. City and County of San Francisco</u>, 196 F.R.D. 362, 368-70 (N.D. Cal. 2000) (finding chief of police not necessarily high government official, and allowing deposition where he had firsthand knowledge and was personally involved); <u>Green v. Baca</u>, 226 F.R.D. 624 (C.D. Cal. 2005) (county sheriff not high ranking but testimony might be limited to prevent unwarranted interference with official responsibilities); <u>Compare</u> <u>Sweeney v. Bond</u>, 669 F.2d 542, 546 (8th Cir. 1982) (governor could not be deposed absent specific need).

On the other hand, the relevance or probative value of the Board members' actions or receipt of information is not especially high either.  This is *not* a case about negligent

decision making where the actual thought processes of the ultimate decision makers are at issue. The mental thought processes of the Board members are only tangentially at issue.  This is a breach of contract case, with other related claims, which will be decided for the most part on the in-court presentation of *objective* facts which warrant, or not, the termination of the Fru-Con contract at issue, or the in-court presentation of *objective* facts which warrant, or not, damages for breach of that contract, whoever is found to be in breach.  See generally Storek & Storek v. Citi-Corp, 100 Cal. App. 4th 44, 122 Cal. Rptr. 2d 267 (2002), requiring an objective rather than a subjective standard even in cases where a covenant of good faith and fair dealing is involved. See also Carma Developers v. Marathon Development Co., 2 Cal. 4th 342, 372-373, 6 Cal. Rptr. 2d 467, 484 (1992) (discussing the issue of subjective versus objective standards of breach of the covenant of good faith and fair dealing but generally emphasizing the objective standard as most useful).  The case will probably not be dispositively decided on whether a certain fact, true or not, important or not, was presented to the SMUD Board when it authorized a delegation of its contractual termination responsibilities to lesser SMUD officials.  The seeming lack of probative value of Board member testimony significantly weighs against the wholesale depositions of Board members.

Finally, a factor that weighs in favor of some depositions is the financial stake at risk in this litigation (huge).  When balanced against the ramifications of the instant case which involves a contract in the hundreds of millions of dollars and potential for debarment, the possible disruption to Board member schedules does not tilt the scales in favor of SMUD. Moreover, the undersigned is the discovery judge, not the trial judge, and should not make conclusive liability standard determinations unless the standards to be applied are well defined and patently clear in the circumstances.  While the undersigned has much doubt about the probative value of the sought depositions, see supra, the undersigned has trepidation in foreclosing all discovery into the matter of what information was presented to the Board.

\\\\\

1    It appears, therefore, that some depositions are called for here.  The Federal Rules

2    of Civil Procedure permit the court to alter the limits on discovery, including the number of

3    depositions.  Factors for consideration in imposing limits are:

4            (i) the discovery sought is unreasonably cumulative or duplicative,
             or is obtainable from some other source that is more convenient,
5            less burdensome, or less expensive; (ii) the party seeking discovery
             has had ample opportunity by discovery in the action to obtain the
6            information sought; or (iii) the burden or expense of the proposed
             discovery outweighs its likely benefit, taking into account the
7            needs of the case, the amount in controversy, the parties' resources,
             the importance of the issues at stake in the litigation, and the
8            importance of the proposed discovery in resolving the issues.

9    Fed. R. Civ. P. 26(b)(2).

10    The court will not repeat its analysis above.  However, based upon that analysis,

11    which has factors favoring each party, SMUD will be required to produce two Board members

12    for deposition, but no more.

13    III.  Information Transmitted During Allegedly "Closed" Board Meetings

14    Fru-Con contends that the January 18, 2005 Board meeting which it claims was a

15    closed session is in violation of the Brown Act.  It cites to Cal. Govt. Code §§ 54950, *et seq.* of

16    the Brown Act which requires that "all meetings of the legislative body of a local agency shall be

17    open and public, and all persons shall be permitted to attend any meeting of the legislative body

18    of a local agency, except as otherwise provided in this chapter."  Cal. Govt. Code § 54953(a).

19    The exception cited by SMUD is found in section 54956.9 which provides in part:

20            Nothing in this chapter shall be construed to prevent a legislative
             body of a local agency, based on advice of its legal counsel, from
21            holding a closed session to confer with, or receive advice from, its
             legal counsel regarding pending litigation when discussion in open
22            session concerning those matters would prejudice the position of
             the local agency in the litigation.

23
             For purposes of this chapter, all expressions of the lawyer-client
24            privilege other than those provided in this section are hereby
             abrogated.  This section is the exclusive expression of the lawyer-
25

26    \\\\\

8

1   client privilege for purposes of conducting closed-session meetings
    pursuant to this chapter.
2

3   Cal. Govt. Code § 54956.9.

4          Fru-Con represents that it seeks testimony about the documents disclosed during

5   an improper closed session; however, as pointed out by SMUD, the remedy for violation of the

6   Brown Act is statutory in nature and does not include disclosure of minutes or redacted minutes

7   of the meeting.   County of Los Angeles v. Superior Court, 130 Cal. App.4th 1099, 1106-07, 30

8   Cal. Rptr.3d 708, 712-13 (2005).  Moreover and importantly, in the absence of specific questions

9   and the context of those questions, the court is in no position to definitively rule on the subject.

10  Therefore, the court will not apply the problematic "Brown Act" privilege in the context of this

11  present dispute.

12  CONCLUSION

13         In accordance with the reasoning outlined in this opinion, IT IS ORDERED that:

14         1.  SMUD's motion for protective order, filed April 28, 2006, is denied in part and

15  granted in part.

16         2.  Fru-Con's motion to compel, filed May 1, 2006, is granted in part and denied

17  in part.

18         3.  SMUD shall produce two Board members for deposition – who are identified

19  by Fru-Con.  As represented by Fru-Con, the depositions shall not include questions concerning

20  why Board members voted in the manner they did, i.e., mental thought processes shall not be the

21  subject of inquiry.[4]

22  DATED: 6/20/06                              /s/ Gregory G. Hollows

23                                             _____
                                               GREGORY G. HOLLOWS
24  GGH:076 - Fru-Con0583.dep.wpd              U. S. MAGISTRATE JUDGE

25  _____

26      [4]  This order does not preclude the noticing of a Fed. R. Civ. P. 30(b)(6) deposition on the
    subject of information presented to Board members.

9