IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRU-CON CONSTRUCTION CORPORATION,

    Plaintiff,                               CIV. NO. S-05-0583 LKK GGH

    vs.

SACRAMENTO MUNICIPAL                ORDER
UTILITY DISTRICT, et al,

    Defendants.
_____/

        Previously pending on this court's law and motion calendar for June 22, 2006 was plaintiff Fru-Con's motion to compel production of improperly withheld documents and further responses to Fru-Con's interrogatories.[1] Steven Cohn, Brian Becker, and John Poulos appeared for Sacramento Municipal Utility District ("SMUD"). Charlie Lee and Jennifer L. Dauer McCready appeared for Fru-Con Construction Corporation ("Fru-Con"). Having reviewed the joint statement and heard oral argument, the court now issues the following order.

BACKGROUND

        A timeline concerning the project is important to application of attorney-client and work product protections, but is especially pertinent to determine when work product immunity began. According to Fru-Con, between 2001 and 2003, SMUD went through the California

---

[1] The joint statement is 88 pages long and contains no table of contents or table of authorities. Other documents in this case have been filed which are similarly defective in this regard. The parties are referred to E.D. Local Rule 5-133(k) which requires a table of contents and authorities for briefs exceeding 15 pages.

Energy Commission ("CEC") regulatory process to obtain licenses and permits for the Cosumnes Powerplant Project ("Project"). The CEC approved the Project on September 9, 2003. SMUD contends that after this decision there were a number of compliance issues for which SMUD sought legal advice, including the notice of violation issued to SMUD when it learned that Fru-Con allegedly exceeded the boundaries set for the section 303 permit regarding protected species from the U.S. Army Corps of Engineers, as well as a violation noticed issued to SMUD when Fru-Con allegedly violated the Storm Water Pollution Prevention Plan.

In January, 2003, SMUD requested proposals to contractors for Phase I of the Project. On April 14, 2003, Fru-Con submitted an initial bid, and then submitted a final bid on June 5, 2003. SMUD claims that Fru-Con threatened litigation as early as mid-August 2003, over a contract provision called SC-51. The parties reached an agreement, however, and after negotiations, a formal construction contract was entered into on August 20, 2003. Fru-Con did construction work throughout the fall of 2003 and during 2004. Problems began in 2004, according to Fru-Con, and in September, 2003, according to SMUD.[2] SMUD recounts numerous problems during this time period in order to demonstrate that litigation was anticipated much earlier than Fru-Con suggests. Two change orders were negotiated during the summer of 2004 and executed on August 10, 2004. Problems came to a head in late August and early September, 2004, according to Fru-Con. A third change order was executed on September 23, 2004. A global change order was negotiated through the end of 2004 and into early 2005. SMUD terminated the contract on February 11, 2005. Fru-Con later discovered that the Board, at the January 18, 2005 SMUD Board Meeting, authorized SMUD to finally negotiate the change order, if possible, or terminate the contract, if necessary.

\\\\\

---

[2] It is difficult for the undersigned to understand how performance on a contract gave rise to anticipation of litigation (on that performance) one month after it was signed, and presumably when little in the way of construction had been performed.

2

DISCUSSION

Fru-Con seeks to compel production of documents listed in SMUD's privilege log which it claims contains cryptic document descriptions, and erroneous attorney-client privilege and work product classifications. Fru-Con also seeks further responses to its interrogatories numbered 2, 3, and 20, arguing that SMUD has not satisfactorily responded. Each dispute will be addressed in turn.

I. SMUD's Privilege Log/ Withheld Documents

Rather than object to specific privilege log entries, Fru-Con has now outlined categories of documents withheld by SMUD for which it seeks the court's ruling on legal issues over which the parties have "conceptual differences," rather than burden the court with an *in camera* review of individual documents, of which there are many thousands. The parties hope to meet and confer after the ruling to resolve any disputes over the individual documents. Thus, the instant opinion is therefore necessarily somewhat abstract in nature. That is, the legal discussion herein is general and will not be finally applied at this time. Moreover, at hearing, the court determined to make the dispute more concrete by having Fru-Con identify twenty sample documents for which privilege was asserted to which the court would make a specific ruling when submitted *in camera* by SMUD. Therefore, Fru-Con will be permitted to identify twenty "sample" documents for which it seeks a specific ruling after *in camera* review. SMUD shall deliver the in camera submissions within five days after identification. After the submission is made to the court, and based on a ruling with respect to those documents, the parties will meet and confer to resolve their differences with respect to the remainder of the documents.

A. In General

"Applying 'reason and experience,' federal courts construe evidentiary privileges narrowly, e.g., Trammel v. United States, 445 U.S. 40, 50, 100 S. Ct. 906, 912, 63 L.Ed.2d 186 (1980) (marital facts privilege). Privileges obstruct the search for truth." U.S. v. Roberson, 859 F.2d 1376, 1378 (9th Cir. 1988). This litigation is beginning to acquire the earmarks of those

cases where the parties' privilege assertions transcend the issues in the case, i.e., the litigation is but a stage for the playing out of privilege assertions with the accuracy and correctness of the litigation a secondary matter. The court directs the parties otherwise, and will therefore scrutinize the parties' assertions of privilege with rigor.

### B. Work Product

The two categories of documents over which disputes have arisen in regard to work product claims, concern: (1) whether certain documents were prepared in anticipation of litigation, and (2) documents prepared during the permit and licensing application process before the CEC.

Work product is not a "privilege," but rather is a court created immunity from disclosure. As such, the applicability of the work product doctrine is governed by federal law in diversity cases. Harper v. Auto Owners Ins. Co., 138 F.R.D. 655, 658 (S.D. Ind. 1991). Airheart v. Chicago & Northwestern Transp. Co., 128 F.R.D. 669 (D.S.D. 1989); W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial § 11:32a.

The work-product doctrine protects documents and tangible things that have been prepared by or for a party or his representative in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). As codified in Rule 26(b)(3), the work product doctrine protects against the disclosure of documents and tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . ." As noted in 1970 by the Advisory Committee on Rules, "Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf." Work product includes "the so-called 'qualified work product' (facts derived from an attorney's investigation) and the 'absolute' version (the attorney's mental thought processes)." Doubleday v. Ruh, 149 F.R.D. 601, 606, 607 (E.D. Cal. 1993); Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (showing beyond

substantial need/undue hardship to discover "opinion" work product); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 933 (N.D. Cal. 1976) (distinguishing between opinion work product and non-mental impression work product).

The party asserting the work-product rule has the burden of establishing, for each document, the rule's application. Green v. Baca, 226 F.R.D. 624, 652 (C.D. Cal. 2005). The protection of the rule is not absolute. When mental impressions are at issue and the need for material protected by the work product rule is compelling, work product may be discovered. Holmgren v. State Farm, 976 F.2d at 577.

As cited by SMUD, "anticipation of litigation" has been defined in the Ninth Circuit as preparation of a document "because of the prospect of litigation." United States v. Torf, 357 F.3d 900, 908 (9th Cir. 2004). The District of Columbia Circuit has further explained it: "[A]t the very least some articulable claim, likely to lead to litigation, must have arisen, ... so that the attorney's work could fairly, if generously, be characterized as 'in contemplation of litigation ....'" Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 865 (D.C.Cir.1980)). "'[T]he mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992), quoting Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983).

A main focus of the parties disputes involves aspects of the "dual use" doctrine, and the court turns to that focus.

1. Administrative Licensing Documents

The mere fact that documents are prepared by employees of a "legal department" who may have attorneys as supervisors does not automatically cloak with privileged status all documents generated by such persons. Businesses frequently prepare documents for multiple purposes, such as to supervise corporate employees, administer self insurance programs, analyze safety, prevent accident reoccurrences, respond to regulatory agencies, and comply with state and

federal statutory and regulatory law.  See Ledgin v. Blue Cross & Blue Shield of Kansas City, 166 F.R.D. 496 (D. Kan.1996) (memorandum prepared by in-house counsel for insurer, to be used for multiple purposes, not work product); Fox v. California Sierra Financial Services, 120 F.R.D. 520 (N.D. Cal.1988) (securities opinion letter prepared in ordinary course of business not work product); Soeder v. General Dynamics Corp., 90 F.R.D. 253 (D. Nev.1980) (report of aircraft accident prepared in ordinary course of business where motives included improvement of products, protection of future pilots and passengers, preventing adverse publicity, and promoting economic interests not work product).  That one of several purposes may be of potential use in prospective litigation ordinarily is not sufficient to invoke the protected status conferred by the doctrine.  See McEwen v. Digitran Sys. Inc., 155 F.R.D. 678, 684 (D.Utah 1994) (work product inapplicable where "primary motivating purpose" for creating of accounting reports was to reissue party's financial statements).

In regard to the permit and licensing application process, SMUD represented at hearing that there are no documents which were submitted during the permit and licensing process itself which are being withheld now.  Therefore, what remains from that category of documents are those documents not actually submitted during the process, but nevertheless related to the licensing process.  Fru-Con cites this court's prior decision in People ex rel. Wheeler v. Southern Pac. Transp. Co., Civ.S. 92-1117 LKK GGH, 1993 WL 816066 (E.D. Cal. Sept. 2,1993) for the proposition that documents prepared in the course of CEC permit and licensing approval proceedings serve the dual purpose of litigation preparation and ordinary business pursuant to public or regulatory requirements, and therefore do not receive work product protection.  SMUD argues that Wheeler is distinguishable because SMUD's counsel hired consultants for the sole purpose of assisting SMUD's in-house and outside counsel in preparation for an adjudicatory proceeding before the CEC, and are not like the Wheeler employees who were co-opted from their normal duties to serve dual roles as consultants.

\\\\\

Accepting SMUD's representation that their outside consultants served only one purpose,[3] the question remains whether the permit and licensing applications procedure, which is the work performed by these consultants, constituted work in anticipation of litigation, or ordinary course of business, or both.

To determine if administrative proceedings implicate work product immunity, they must involve litigation. Southern Union Company v. Southwest Gas Corp., 205 F.R.D. 542, 549 (D. Az. 2002). "'Litigation' includes a proceeding in a court or administrative tribunal in

---

[3] SMUD is advised, however, that if there is any ambiguity regarding the role played by its consultants in reviewing or creating documents, and if not strictly for the limited purpose of litigation, it should be resolved in favor of the party seeking discovery. B.F.C. Oil Refining, Inc. v. Consolidated Edison Co. Of N.Y., Inc., 171 F.R.D. 57, 62 (S.D.N.Y. 1997). This is especially true where an expert has first reviewed documents as a consultant, and then becomes an expert. The roles are blurred in this instance and the documents are discoverable. Id. at 61.

As this court previously stated in its Wheeler order, well established case law has refused to protect that information which a party has acquired because of a public or business duty simply because a litigation involving that information is probable or in existence. In Goosman v. A. Duie Pyle, Inc., 320 F.2d 45, 52 (4th Cir. 1963), the court declined to extend this type of protection to documents created pursuant to the Interstate Commerce Commission's regulations because they were made in the ordinary course of business, and could not have represented the attorney's work product. More recently, in National Union Fire Ins. v. Murray Sheet Metal, 967 F.2d 980, 984 (4th Cir. 1992), the court stated:

> ... we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

Cases deciding that documents were generated in the ordinary course of business or as a result of an independent duty, have all reached the conclusion that such reports will not receive work product protection. For example, in cases deciding that police reports were not protected by the work product doctrine, the court looked at whether the police investigation was made in anticipation of litigation or whether it was routine procedure. Miller v. Pancucci, 141 F.R.D. 292, 303 (C.D.Cal. 1992); Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D.Cal. 1987). Further, a medical examiner's report which was prepared pursuant to an obligation to determine the cause of death, and in furtherance of his routine duties as a city employee, was held not to be in anticipation of litigation, and Rule 26(b)(4)(B) was inapplicable. Harasimowicz v. McAllister, 78 F.R.D. 319 (E.D.Pa. 1978).

It is also well established that insurance companies have an independent obligation to review and follow up on claims, and their reports are thus not protected, although they are usually prepared with an eye toward litigation. Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D.Ind. 1991). This is so even after litigation is anticipated. Id. at 661. The test is whether the report was prepared in the "ordinary course of the party's business." Id. See Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988); Fairbanks v. American Can Co., 110 F.R.D. 685, 688 (D.Mass. 1986); Airheart v. Chicago and North Western Transp. Co., 128 F.R.D. 669, 671 (D.S.D. 1989).

which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation." U.S. v. American Tel. & Tel. Co., 86 F.R.D. 603, 627 (D.D.C. 1979). The determining factor in the analysis is whether the parties have a right to cross-examine witnesses and therefore introduce evidence. If so, the proceedings are adversarial in nature. Id. at 628. For example, interference proceedings in the patent office (to determine which party has the earlier patent date), have been found to involve work prepared for use in litigation. Natta v. Hogan, 392 F.2d 686, 693 (10th Cir. 1968). As such, the use of work product protection is not limited to proceedings in a court of record. Id. Preparation of a patent application for prosecution, however, is not adversarial, but is primarily an *ex parte* administrative proceeding. Pacific Gas and Electric Co. v. United States, 69 Fed. Cl. 784, 794 (2006). In contrast, preparation for a patent reexamination proceeding where there has been later related litigation in federal court has been held to be in anticipation of litigation. Id. Only the adversarial aspects of Nuclear Regulatory Commission licensing application proceedings, which pertain to an electric utility's license to operate nuclear power plants, constitute litigation. Id. at 804. Where an application to amend a license involves an adjudicatory proceeding wherein interested parties may participate in a hearing, litigation is implicated. Id. at 803. Where, however, there is only a limited appearance by outside parties and the proceedings are not adversarial but mostly *ex parte*, this aspect of the proceeding does not constitute litigation. Id. at 804.

Furthermore, work product is not limited to proceedings which are strictly related to each other. The Fourth Circuit in Duplan Corp. v. Moulinage at Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973), found that work product from a prior patent suit involving a different party applied to a later patent suit with a new party. In In re Grand Jury Proceedings, 604 F.2d 798, 803 (3rd Cir. 1979), the court found that documents prepared for use in civil proceedings where the FMC Corporation was negotiating with the EPA concerning pollution problems, qualified as work product because they concerned the same subject matter as the criminal grand

1  jury proceedings, discharge of chemicals, and the two proceedings were close in time, despite the
2  fact that the EPA documents were not prepared in connection with the grand jury proceedings.
3        At hearing, the nature of the CEC permit and license proceedings were described
4  in further detail.  Subject to further factual presentation, the CEC proceedings are found
5  adjudicatory in nature as they involved intervenors who are opposed to the permit and/or
6  licensing process; there are hearings before hearing officers and/or commissioners which involve
7  cross-examination of witnesses, evidentiary rulings, findings of fact, and other procedures in the
8  nature of litigation.  The court also finds that the administrative licensing proceedings are
9  sufficiently related to the present dispute that work product protection potentially applies.

      2.  <u>NWG Documents</u>

      SMUD clarifies that in regard to Fru-Con and its surety (Travelers), SMUD has had only one litigation consultant, the Nielsen-Wurster Group ("NWG"), since March 1, 2004, to assist SMUD's outside counsel, Bright and Brown.  All of NWG's work has been performed at the direction of counsel.  Furthermore, NWG was hired specifically to help address disputes with Fru-Con, thus in anticipation of litigation.  Although Fru-Con argues that NWG was retained to cloak documents with immunity, there has been no evidence presented in support of this contention.

      Based on the facts presented and representations made at hearing, it appears that SMUD anticipated litigation at least as early as March, 2004 when it retained NWG.  Therefore, unless specifically shown otherwise for specific documents, for purposes of this dispute, the pertinent date for work product protection may extend back to March 1, 2004.

      B.  <u>Attorney-Client Privilege</u>

      The documents over which the privilege is claimed consist of documents (1) exchanged between SMUD employees, (2) exchanged between SMUD employees and consultants; and (3) exchanged between SMUD's counsel and consultants.

\\\\\

California law governs privilege matters in this diversity litigation. First, privileges in California law are narrowly construed in California as their invocation tends to impair the search for the truth. McKesson HBOC, Inc v. Superior Court, 115 Cal. App. 4th, 1236, 9 Cal. Rptr. 3d 812, 817 (2004). And, the party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute. HLC Properties, Ltd. v. Superior Court, 35 Cal. 4th 54, 59, 24 Cal. Rptr. 3d 199, 202 (2005).

Second, simply because counsel's name is attached to a document in some capacity does not render it privileged.

> The privilege does not protect "independent facts related to a communication; that a communication took place, and the time, date and participants in the communication." (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 640, 62 Cal.Rptr.2d 834.) Further, the privilege "does not protect disclosure of underlying facts which may be referenced within a qualifying communication" (id. at p. 639, 62 Cal.Rptr.2d 834), and it does not extend to individuals who are no more than witnesses to the matter at issue in the litigation. (Martin v. Workers' Comp. Appeals Bd. (1997) 59 Cal.App.4th 333, 345, 69 Cal.Rptr.2d 138.) "'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney....' While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.'" (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 397, 15 Cal.Rptr. 90, 364 P.2d 266.) "[T]ransmission alone, even where the parties intend the matter to be confidential, cannot create the privilege if none, in fact, exists." (Suezaki v. Superior Court (1962) 58 Cal.2d 166, 176, 23 Cal.Rptr. 368, 373 P.2d 432.) Documents that are independently prepared by an attorney "do not become privileged communications ... merely because they are turned over to counsel." (Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 119, 68 Cal.Rptr.2d 844 (Wellpoint).)

2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App.4th 1377, 1388, 7 Cal. Rptr.3d 197, 205 (2003).[4]

---

[4] In the federal case of In re Gabapentin Patent Litigation, 214 F.R.D. 178, 186 (2003), the common sense rule concerning business communications with counsel was stated even more clearly applicable to the instant situation: "Non-privileged communications or documents forwarded or Cc'd to an attorney: If documents are created for routine business purposes, by

Third, "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." Chicago Title Ins. v. Superior Court, 174 Cal. App.3d 1142, 1151, 220 Cal. Rptr. 507, 514 (1985). The courts have found that the attorney-client privilege did not apply without qualification where the attorney was merely acting as a negotiator for the client (Montebello Rose Co. v Agri. Labor rel. Brd, 119 Cal. App. 3d 1, 32-35, 173 Cal. Rptr. 856, 873-875 (1981), or merely gave business advice (Estate of Perkins v. Bigelow, 195 Cal. 699, 710, 235 P. 45(1925)).

In regard to communications involving employees, not every communication by an employee to corporate counsel is imbued with the attorney-client privilege; on the other hand, an employee need not be a member of any special group in order to be an employee whose related confidences to corporate counsel will be protected. Upjohn v. U.S., 449 U.S. 383, 395-96, 101 S. Ct. 677, 685 (1981). An employee's conversations with corporate counsel will be protected when the employee understands that he is being interrogated by corporate counsel *on matters within the scope of the employee's duties* for the purpose of the attorney giving advice to the corporation. Id. at 394, 101 S. Ct. at 685. Finally, Upjohn itself held that it was not setting any rigid rules for analysis of when an employee's conversations were considered privileged; rather such a determination was to be made case-by-case upon the basis of pertinent facts and circumstances. Id. at 396, 101 S. Ct. at 686.

\\\\\

---

non-attorneys, they do not fall within the purview of the work product privilege. Forwarding an e-mail or other such document that fits this description to an attorney does not transform it into the attorney's work product-i.e. a reflection of his 'mental impressions,' or 'legal strategy,'and such documents are not 'created in anticipation of litigation'. Neither can it be said that communications between clients, unrelated to legal issues or advice, fall under the attorney client privilege. Including an attorney on the distribution list of an interoffice memo, Cc'ing numerous people who are ancillary to the discussion, one of whom happens to be an attorney, or forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication.'"

Agents or third persons, such as NWG, to whom disclosure is permissible include "those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and advice given by the lawyer in the course of that relationship." 2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App. 4th 1377, 1388, 7 Cal. Rptr. 3d 197, 205 (2003), quoting Cal. Evid. Code § 952.

The court will consider these general guidelines when assessing the propriety of attorney-client privilege assertions with respect to specific documents.

II. Interrogatories

Fru-Con objects to three interrogatory responses, numbered 2, 3 and 20. As presently worded, interrogatories 2 and 3 are contention interrogatories. At the hearing, the court directed that Fru-Con re-draft these interrogatories. Fru-Con requested that the newly issued interrogatories not be counted toward Fru-Con's limit. That request is granted. The parties stipulated that Fru-Con could have until July 14, 2006 to propound the two replacement interrogatories. SMUD has twenty days thereafter to respond.

Interrogatory number 20 requests that SMUD identify any analysis by or for SMUD relating to the impact on the substantial completion date of the Project if Fru-Con were terminated for default, and whether such analysis was performed before or after February 11, 2005. At the time of the hearing, the parties had narrowed the disputed area to formal analysis performed prior to termination of the contract that SMUD claims were performed by or at the direction of counsel. By the request to identify documents, Fru-Con seeks the date of the analysis, who performed the analysis, and identification of documents containing the analysis. SMUD represents that any documents not identified consists of communications between it and outside counsel, which the court previously advised were not required to be included on privilege logs in regard to documents. Despite this provision made by the court at the suggestion of one or both parties, the law remains that the proponent of the privilege or protection has the burden to

defend it. HLC Properties, Ltd. v. Superior Court, 35 Cal. 4th 54, 59, 24 Cal. Rptr. 3d 199, 202 (2005) (attorney-client privilege); Green v. Baca, 226 F.R.D. 624, 652 (C.D. Cal. 2005) (work product). SMUD cannot simply use this logistical stipulation that was adopted by order to prevent claimed protections from being challenged in any way. SMUD, by not describing the privileged information, or submitting any declaration or other evidence in support, has presently failed to meet its burden to defend its claim of privilege. Fed. R. Civ. P. 26(b)(5); U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc., ___ F.R.D. ___, 2006 WL 1515914, *2 (D.D.C. June 2, 2006).[5]

Therefore, SMUD shall serve a supplemental response which includes, in reference to certain formal analyses SMUD admits it performed prior to February 11, 2005, the date of the analysis, who performed the analysis, the addressee, if any, of the analysis, and identity of the documents containing the analysis. The supplemental response to this interrogatory shall be provided to Fru-Con within ten days of this order with a filing reflecting service or SMUD's claimed protections will be waived.

CONCLUSION

In accordance with the reasoning outlined in this opinion, IT IS ORDERED that:

1. Fru-Con shall identify twenty contested documents for *in camera* review within five days of this order; and SMUD shall submit them forthwith (no later than five days after identification) to the court by delivery to chambers.

2. Fru-Con shall propound two replacement interrogatories for numbers 2 and 3

---

[5] Courts have required privilege logs in support of privileges claimed in response to interrogatories. Pogue, 2006 WL 1515914, at *2; Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 537 (D. Kan. 2003). Nevertheless, whether the response is in the form of a privilege log or a response providing with particularity the precise manner by which the privilege is claimed, a description of the withheld information and reasons for preserving confidentiality must be provided in order for the challenger to be able to assess the claim of privilege. Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D. N. J. 1996); Pogue, 2006 WL 1515914, at *2; Starlight Intern. Inc. v. Herlihy, 186 F.R.D. 626, 641 (D. Kan. 1999) (permitting party claiming privilege to either provide supplemental responses to interrogatories or privilege log).

1 | by July 14, 2006.  SMUD shall have twenty days thereafter to respond.

2 |       3. SMUD shall provide Fru-Con with a supplemental response to interrogatory

3 | number 20 within ten days of this order.

4 | DATED: July 20, 2006

                                    S/S   Gregory G. Hollows
                                    GREGORY G. HOLLOWS
                                    U. S. MAGISTRATE JUDGE

6 | GGH:076 - Fru-Con0583.doc