1

2

3

4

5

6                         IN THE UNITED STATES DISTRICT COURT

7                      FOR THE EASTERN DISTRICT OF CALIFORNIA

8    FRU-CON CONSTRUCTION CORPORATION,

9            Plaintiff,                              CIV. NO. S-05-0583 LKK GGH

10           vs.

11
     SACRAMENTO MUNICIPAL                     ORDER
12   UTILITY DISTRICT, et al,

13           Defendants.
                                         /
14

15           SMUD has submitted for in camera review the twenty "sample" documents which

16   had been identified in the SMUD privilege log, and to which Fru-Con took exception vis-a-vis

17   their privileged status.  The court hereby issues its ruling.[1]

18           The legal themes directing the decision here are those themes previously

19   discussed in previous orders.  The undersigned will not repeat them in their entirety here.

20   However, emphasis of the principles that direct this decision should be given.

21       *Attorney-Client Privilege*

22           California law governs privilege matters in this diversity litigation. First Pacific

23   Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 576, 576 (N.D. Cal. 1995).  First,

24   _____

25       [1]  In the letter submitting and explaining the "who's who" concerning the documents at
     issue, SMUD asked for yet further opportunity to convince the court that the submitted
     documents were privileged if the court believed that they were not.  However, there has been
26   sufficient discussion about legal standards and the like already.  Decision time is here.

                                              1

1  privileges under California law are narrowly construed as their invocation tends to impair the

2  search for the truth.  McKesson HBOC, Inc v. Superior Court, 115 Cal. App. 4th, 1236, 9 Cal.

3  Rptr. 3d 812, 817 (2004).  In California, communications between a lawyer and client which are

4  intended to be confidential are protected from disclosure.  Cal. Evid. Code § 952 (emphasis

5  added).

6           As used in this article, "confidential communication between client
           and lawyer" means information transmitted *between a client and*
7           *his or her lawyer in the course of that relationship* and in
           confidence by a means which, so far as the client is aware,
8           discloses the information to no third persons other than those who
           are present to further the interest of the client in the consultation or
9           those to whom disclosure is reasonably necessary for the
           transmission of the information or the accomplishment of the
10          purpose for which the lawyer is consulted, and includes a legal
           opinion formed and the advice given by the lawyer in the course of
11          that relationship.

12  The statute cannot be read as permitting a privilege to apply to the "abundance of caution"

13  copying of a lawyer on every business document that the author would otherwise not care to see

14  made public at a later time.  Nor can it automatically be done so as to place every communication

15  within the ambit of the privilege.  Certainly, that is not a "narrow" construction of the privilege.

16  The dominant purpose of transmission to the attorney must be the rendition of confidential facts,

17  beliefs, questions, etc. upon which the client will be seeking advice.  If the case were otherwise,

18  business persons with in-house counsel would be instructed (as might seemingly be the case here

19  for several persons) simply to always copy the attorney on every document created so that

20  privilege could be asserted later if necessary.  The court has previously cited to the federal case of

21  In re Gabapentin Patent Litigation, 214 F.R.D. 178, 186 (2003), which supplies the common

22  sense rule concerning business communications with counsel and is clearly applicable to the

23  instant situation even under state law:

24          Non-privileged communications or documents forwarded or Cc'd
           to an attorney: If documents are created for routine business
25          purposes, by non-attorneys, they do not fall within the purview of
           the work product privilege.  Forwarding an e-mail or other such
26          document that fits this description to an attorney does not

1    transform it into the attorney's work product-i.e. a reflection of his
     'mental impressions,' or 'legal strategy,' and such documents are
2    not 'created in anticipation of litigation.'  Neither can it be said that
     communications between clients, *unrelated to legal issues or*
3    *advice*, fall under the attorney client privilege.  Including an
     attorney on the distribution list of an interoffice memo, Cc'ing
4    numerous people who are ancillary to the discussion, one of whom
     happens to be an attorney, or forwarding an e-mail several times
5    until it reaches an attorney does not amount to 'attorney client
     communication.' (emphasis added)

6

7    The "relationship" between attorney and client referenced in the California statute is something

8    more than simply "we all work for SMUD."  Rather, the dissemination of information to the

9    lawyer must indicate that the lawyer is being addressed so that advice can be formulated or action

10   taken, not simply for FYI reasons – or worse yet, simply because the lawyer must be added in

11   order to make a non-privileged document assertedly privileged.  "[I]t is the unquestioned rule

12   that the mere relationship of attorney-client does not warrant a presumption of confidentiality [of

13   all documents and discussions]."  Winchester Capital Management Co., Inc. v. Manufacturers

14   Hanover Trust Co., 144 F.R.D. 170, 174.   "A mere showing that the communication was from

15   client to attorney does not suffice, but the circumstances indicating the intention of secrecy must

16   appear.   McCormick, Evidence, § 91, pp. 187-88 (Cleary ed. 1972) quoted in re Grand Jury

17   Proceedings, supra, 727 F.2d at 1355."  Id.

18        Finally, the most recent discovery order in this case focused on the dual business

19   and legal aspects of documents.  Unless it can be said that the dominant purpose of transmitting

20   information to an attorney is the seeking of legal advice, the attorney-client privilege is non-

21   existent. Scripps Health v. Superior Court,109 Cal. App. 4th 529, 533, 135 Cal. Rptr. 2d 126,

22   128 (2003).

23        *Work Product Immunity*

24        The court will not repeat its previous advisements on the *federal* work product

25   immunity law, the law to be applied here.  The precise issue discussed below involves two areas:

26   (1) the protection afforded, if any, to a consultant's "file" when that consultant has testified

3

1    (either in writing or orally) in adversarial adjudicatory proceedings; and (2) whether a waiver in a

2    previous, related administrative proceeding would constitute a waiver in this litigation.

3            While the cases are not entirely consistent on the subject, the better rule, and the

4    one to be applied here, derives from In re : Pioneer Hi-Bred, 238 F.3d 1370, 1375 (Fed. Cir.

5    2001) which, relying on the Advisory Comm. Note to 1993 Amend. to Fed. R. Civ. P. 26(a)(2),

6    held:  "Given this obligation of disclosure, litigants should no longer be able to argue that

7    materials furnished to their experts to be used in forming their opinions – whether or not

8    ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when

9    such persons are testifying or being deposed."  It does not matter that the expert tendered only a

10   final report in the adversarial proceeding – all of the underlying file becomes subject to

11   inspection.

12           The tension between a search for the truth and upholding privileges, including

13   immunities, is one that has bedeviled the courts for decades.  Of course, without an emphasis on

14   a search for the truth, our system of litigation would be arbitrary, useless; nevertheless, a party

15   should also be able to prepare his, her or its case in relative peace without having the probing

16   eyes of one's adversary inspecting every doubt, "blocked road," mistake, frank discussion or

17   afterthought.  In this case (as in all cases) the undersigned believes that although privileges serve

18   an important role in the litigation process, they are also impediments to the truth seeking process,

19   and should not be expanded beyond their core purpose. United States v. Gray, 876 F.2d 1411,

20   1415 (9th Cir. 1989).  Privileges should not be seen as an "end" in litigation, but simply as one

21   means to a just end.

22           Thus, in any litigation, designation of an expert as a testifying expert eviscerates

23   any work product immunity otherwise available for the entire file.

24           The vast number of circuit courts also hold that a waiver in a prior administrative

25   proceeding waives whatever privilege or immunity exists prospectively as well. In re Qwest

26   Communications Inter. Inc., 450 F.3d 1179, 1187 (10th Cir. 2006) (discussing cases).

1    Documents submitted to governmental agencies waive the privilege with respect to such

2    documents.   And while the court would not hold that attorney-client documents, not actually

3    submitted, would lose their privileged status simply because other privileged documents were,

4    the result is not the same for documents allegedly protected by work product.  The bases for the

5    privilege as opposed to the immunity are so dissimilar.

6            The attorney-client privilege is a strong and absolute privilege where it is

7    applicable.  It is based on the need for clients to confer confidentially with attorneys so that

8    litigation decisions can be formed without fear of discovering those sensitive communications.

9    The work product immunity, on the other hand, although in some respects a broader privilege[2] is

10   also a weaker protection subject to overriding if the needs of the case so dictate.  See Fed. R. Civ.

11   P. 26(b)(3); Holmgren v. State Farm Ins., 976 F.2d 573 (9th Cir. 1992) (attorney thought

12   process).  The purpose of the work product doctrine is to not permit one's adversaries to

13   piggyback on the work of the diligent counsel, and to allow an attorney to prepare a client's case

14   without constant "let me see" interruptions from opposing counsel.  However, as seen above,

15   once the expert is tendered in adjudicatory proceedings, and no one contests the fact that the CEC

16   proceedings at issue here were adjudicatory and adversarial, the rationale for keeping the work

17   product confidential evaporates.  The need to understand the bases for the expert's opinions

18   greatly outweighs any lingering need to keep work product secret in whole, *or in part*.  Thus, all

19   information given to the expert is fair game for disclosure.  An incomplete release of expert

20   information would lead to an incomplete and inaccurate picture of the issue at bar.

21           The result should be no different prospectively.  Here, Fru-Con does not seek to

22   avoid work in this case by "lifting" the ideas of its adversaries created in past adjudicatory

23   proceedings.  It seeks the CEC documents in order to impeach SMUD, i.e., to ascertain what

24   SMUD experts *really* thought and think on an issue related to this case.  If the entire work

25   _____

26       [2] Work product does not require a communication to anyone to be applicable.

5

1  product would be considered waived for federal purposes in the adjudicatory proceedings, and it

2  would, see Pioneer Hi-Bred, it makes no sense to re-impose a secrecy bar in this later, and related

3  somewhat, federal litigation.  None of the underlying principles of the work product doctrine

4  would be prejudiced; rather, a reimposition of secrecy would merely permit the parties to engage

5  in a game of hide the ball.[3]

6         The court now turns to review of the 20 sample documents for which

7  privilege/immunity was asserted.

8  Document 1 (Supplemental e-mail Log No. 976)

9         If there ever were a manipulated creation of attorney-client privilege, these

10  documents show it.  The author of the e-mail underlying the e-mail at issue, a management non-

11  lawyer, is writing another management non-lawyer concerning potential disputes with Fru-Con.

12  The author states that he "thought it best to offer my thoughts in writing and do so under the

13  privilege."  The writer believes that all he has to do to automatically imbue the document as

14  privileged is to "cc" the attorney because nowhere in the document does he indicate that he is

15  seeking any advice whatsoever from the attorney.  This ordinary business document was written

16  for an ordinary business reason; clearly the dominant impetus for the document was not the

17  seeking of legal advice.  Moreover, the simple statement in the document that SMUD has spent

18  "x dollars" on attorneys with respect to project problems, in no way constitutes, as SMUD puts it

19  in its enclosure letter, a "discuss[ion] of work performed" by counsel.  The attachment,

20  commented upon in the e-mail, is a letter sent to Fru-Con from SMUD.

21         Thus, the follow-up e-mail at issue, simply a commentary on the first e-mail, not

22  written or copied to any lawyer can hardly be said to be attorney-client privileged.

23

24      [3] Nothing herein should be construed as finding that SMUD could not use these same
experts as true non-testifying consultants for the express purpose of consulting in *this* litigation.

25  Such work product created for *this* litigation would retain immunity from production assuming
that the consultants would not be designated as testifying in this litigation.  Of course, SMUD

26  would need some objective manifestation of retention of these experts for this purpose.

1    No cognizable attorney-client privilege exists, and it is certainly not attorney

2    work-product.  The document shall be produced forthwith.

3    Document 2 (Supplemental e-mail Log No. 993)

4    Similar to the previous e-mail at issue, the e-mail response/commentary at issue

5    here is underlain by an original e-mail.  The e-mail response is not written by a lawyer to a

6    lawyer or copied to a lawyer.  The underlying e-mail recounts a telephone call conversation that a

7    SMUD non-lawyer had with an official of another agency.  The underlying e-mail, although

8    disseminated to a lawyer among other non-lawyers, in no way seeks or indicates that the lawyer

9    is copied for the purpose of legal advice.  The actual person addressed, "Joe," is a non-lawyer.

10   The underlying e-mail ends, not with a comment such as "we all have to get together to

11   determine what to do" (a comment which might indicate that advice is being sought) but simply:

12   "You should expect a call [from an outside agency person]...."

13   Because the underlying e-mail is not privileged, neither is the commentary e-mail

14   at issue.  The underlying e-mail could be considered potentially embarrassing to SMUD in its

15   relation with the agency, but embarrassment is not a justification for privilege assertion.

16   Document 3 (Supplemental e-mail Log No. 995)

17   The e-mail at issue references case specific attorney advice, both substantive and

18   on "how to act."  Privilege is validly asserted for this document as the information was

19   disseminated to those persons within the ambit of the California attorney-client statute cited

20   above.

21   Document 4 (Supplemental e-mail Log No. 1025)

22   The e-mail at issue and its underlying e-mails reference a document, which inter

23   alia, is being sent to counsel *for input.*  Privilege is validly asserted for all referenced documents,

24   including the draft letter.

25   \\\\\

26   \\\\\

Document 5 (Supplemental e-mail Log No. 1090).

      The initial e-mail in a string of e-mails, only copied on counsel, references the fact that a permit was received and congratulations are in order for all concerned.  Quite clearly, nothing in the e-mail was sent in connection with seeking advice, giving facts etc. for advice to be given, or acquiring advice of counsel itself.  The remainder of the e-mails, perhaps only related because "reply" buttons were hit, do not even copy counsel, and have little substantive relation, if any, to the innocuous, and most probably unprivileged, first-email.  The e-mail at issue is simply a continuation of  commentary among non-lawyers on a subject(s) for which there is no evidence that counsel gave, or was given, any input.

      The contested e-mail shall be produced forthwith.  Again, potentially embarrassing communications can not be hidden under a privilege umbrella simply because they may be embarrassing.

Document 6 (Supplemental e-mail Log No. 114)

      As stated in the enclosure letter, this memorandum was sent from Kevin Hudson summarizing a telephone conversation among counsel, experts and SMUD personnel related to the CEC proceedings.  The memorandum is protected by attorney-client privilege.

Document 7 (Supplemental e-mail Log No. 63)

      The underlying document to the e-mail is a letter that appears to have been actually sent to the Army Corps of Engineers in connection with the CEC proceeding, or some other agency proceeding.  The e-mail at issue merely relates the logistics of transmission of the letter to the Corps of Engineers.  SMUD has previously represented that all documents filed in agency adjudicative proceedings have been produced to Fru-Con.  The e-mail(s), authored by and addressed to non-lawyers, setting forth that a final draft had been prepared, and had been ultimately sent to the Corps cannot possibly be held to be confidential, privileged information of any sort entitled to attorney-client or work product privilege.

\\\\\

1  Document 8 (Supplemental e-mail Log No. 77)

2          While one could question the probative value of this document to any part of the

3  case, the issue here is whether the document is protected by work product.  SMUD represents

4  that the e-mail is authored by a consultant in the CEC adjudicatory process.

5          The undersigned requested that SMUD file a statement concerning whether the

6  Huffman-Broadway consultants or those from CH2M Hill had testified in the CEC proceedings,

7  either orally or in writing.  SMUD lawyers believed that both sets of consultants had submitted

8  either verbal or written testimony, or both.  Therefore, having taken the position before the court

9  that the CEC proceedings were adversarial and adjudicatory, for the reasons set forth above,

10  SMUD maintains no work product immunity for those testifying consultants.  The document

11  shall be produced.

12  Document 9 (Supplemental e-mail Log No. 99)

13          Although written by a retained attorney, this e-mail has little to do with the

14  transmission of confidential information to the client, and should be of no use to Fru-Con.

15  However, on the off chance that the first sentence of the e-mail contains something of substance

16  from the attorney, the attorney-client privilege would attach.

17  Document 10 (Supplemental e-mail Log No. 105)

18          The work product assertion for the e-mail at issue involves the cover "letter"

19  transmission of a photograph, with a characterization of what the photograph shows, written by a

20  non-lawyer and addressed to another non-lawyer and a consultant.  Ostensibly the e-mail and

21  photo had something to do with the CEC process.  SMUD explains that the e-mail "necessarily

22  involved consultants hired at the direction of counsel in connection with CEC matters."

23  According to SMUD, then, every communication that anyone at SMUD had with a consultant in

24  the CEC process was creating work product.  The alleged work product at issue does not involve

25  an attorney's investigation or that of the consultant for the attorney.  The court will not stretch the

26  work product doctrine to such absurd lengths, and will find that SMUD has not met its burden by

1  asserting its general "everything sent to the consultant" is work product.

2          In any event, in the alternative, for the reasons set forth above, even if initially

3  protected by work product, the immunity from production is gone.  The document shall be

4  transmitted forthwith to Fru-Con.

5  Document 11 (Supplemental e-mail Log No. 108)

6          SMUD asserts that the "date, senders, recipients, and subject of this e-mail are

7  identical" to the previous e-mail at issue.  Therefore, the court's ruling is identical as well.  The

8  e-mail shall be produced.

9  Document 12 (Supplemental e-mail Log No. 109)

10          The e-mail at issue here involves the transmission of an SWCA consultant report

11  to the testifying consultants.  Certainly, the innocuous e-mail is not work product.  Moreover,

12  neither the transmission e-mail nor the report(s) themselves retain any work product immunity as

13  they were reviewed by the testifying experts.  The document shall be produced.

14  Document 13 (Supplemental e-mail Log No. 110)

15          This document is no longer at issue and has been produced.

16  Document 14 (Supplemental e-mail Log No. 70)

17          For the reasons previously expressed, SMUD determined to waive any work

18  product for file information in its testifying expert's files.  Similarly to many of the work product

19  e-mails for which work product is claimed, the undersigned doubts if this is the "case breaker";

20  nevertheless, it shall be produced.

21  Document 15 (Supplemental e-mail Log No. 78)

22          For the work product reasons heretofore expressed, the document shall be

23  produced.

24  Document 16 ( Hard Copy Log No. 494)

25          The memo at issue is written by non-lawyers (or even anyone retained by

26  lawyers), and the memo merely comments upon the work of consultants (for whom the court has

1   found to be testifying experts).  Work product cannot possibly be claimed for inter-office

2   commentary of non-legal personnel on the job performed by SMUD's consultants.  The

3   document shall be produced.

4   Document 17 ( Hard Copy Log No. 390)

5           SMUD has produced this document belatedly recognizing that a privilege claim

6   was not sustainable.  SMUD is correct.

7   Document 18 ( Hard Copy Log No. 404)

8           For the "testifying expert" reasons previously expressed, no work product

9   immunity can attach to this document.  It shall be produced.

10   Document 19 (Hard Copy Log No. 447)

11          This document is not now at issue, and SMUD has agreed to produce this

12   document.

13   Document 20 (Hard Copy Log No. 492)

14          Evidently, Fru-Con meant to refer to the revised or supplemental e-mail log no.

15   492.  This document cannot possibly be attorney-client privileged simply because it is copied to

16   counsel.

17   *Conclusion*

18          The court finds that, for the most part, the assertion of privilege or immunity by

19   SMUD was unwarranted – clearly unwarranted with respect to privilege assertions.  SMUD shall

20   review its other assertions of privilege/immunity with this order in mind.

21          The documents ordered produced herein shall be produced within 10 calendar

22   days of the filed date of this order.  SMUD shall arrange to pick up the documents submitted in

23   camera.

24   DATED: 8/7/06                                          /s/ Gregory G. Hollows

25                                                          _____
                                                           GREGORY G. HOLLOWS
                                                           U. S. MAGISTRATE JUDGE
26   GGH:ggh - Frucon.cam