IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRU-CON CONSTRUCTION CORP.,

    Plaintiff,                     CIV S-05-0583 LKK GGH

    vs.

SACRAMENTO MUNICIPAL          <u>ORDER</u>
UTILITY DISTRICT, et al.,

    Defendants.
_____/

       Previously pending on this court's law and motion calendar for August 3, 2006, was SMUD's motion to compel further deposition testimony of James Corwin and production of two documents over which attorney-client privilege is claimed. Charlie Lee, Eileen Diepenbrock, and Bennett Lee appeared for Fru-Con. John Poulos and Brian Becker appeared for SMUD. Having reviewed the joint statement filed July 27, 2006, and heard oral argument, the court now issues the following order.

\\\\\

\\\\\

\\\\\

\\\\\

1

Discussion

At issue are two documents created by Fru-Con, one labeled exhibit 1195 by SMUD, and the other labeled Entry 11 in Fru-Con's privilege log.[1] Fru-Con's claim of privilege is limited to the attorney-client privilege. SMUD takes issue with Fru-Con's claim that the documents are confidential communications. To the extent the documents are considered privileged, SMUD argues that they are not protected due to the crime-fraud exception, or because the privilege has been waived. In connection with Exhibit 1195, SMUD seeks the further deposition of James Corwin who was instructed not to answer questions concerning the Exhibit.

Exhibit 1195

Exhibit 1195 is entitled "CONSTRUCTION LAW/ADMINISTRATION OF CONSTRUCTION CONTRACT SACREMENTO (sic) MUNICIPAL UTILITY DISTRICT"

Despite the belated assertions of counsel at hearing, this document, draft or otherwise, appears to be applicable to any Fru-Con "project team" personnel[2] working on the SMUD project. The document is a contract administration primer, and, except for the title, is not specific to the SMUD project. It generally advises the reader how to deal with problems that may arise on the job, and how to avoid or deal with situations which may cause financial problems to Fru-Con. The document contains no text or annotation that it is confidential or otherwise subject to some type of legal privilege.

\\\\\

---

[1] The document listed as entry 11 was provided to the court at hearing for *in camera* review.

[2] Even the document drafter (for the most part), General Counsel, Len Ruzicka, relates that he drafted the document "to familiarize the Project team" with the legal rights and responsibilities.... Ruzicka Declaration at 3. Moreover, the language of the Exhibit 1195 clearly was written for more than one person's use: "If you recognize a problem..... please contact your operations manager. Thus, to the extent that Daniel Haas, a Senior Vice President, testified that the document was for his use only, such is belied by the facts. While the document may well have been initially sent to Haas for "his review and consideration," it is not a document that was drafted for, and only for Daniel Haas.

1       According to the General Counsel at the time, Leonard Ruzicka, he drafted the

2 document, but *did not draft* that part of the document which cautions the reader to make no

3 negative statements about Fru-Con, and if anything has to be written down make sure that

4 privilege can be claimed for the writing by showing Ruzicka as a recipient:

> A note concerning email (personal or otherwise) and communications through or retained on Constructware;. MAKE ABSOLUTLY [sic] NO NEGATIVE COMMENTS OR STATEMENTS ABOUT FRU0-COP [sic], ITS PERFORMANCE OR THE PERFORMANCE OF IT [sic] EMPLOYEES. In the event personnel issues and/or company performance communications must be handled either electronically or in hard copy include in the document a statement declaring it as a lawyer/client privileged communication and show Len Ruzicka as a recipient.

11 Exhibit 1195, at 5.

12       Ruzicka states in his declaration that although he did not draft this "Notes" section

13 of the document, he did have discussions with Daniel Haas about this section, but would not

14 have stated the paragraph as it appears.  He explained that his intent was to not have anyone

15 memorialize an opinion unless that person was fully informed of the facts and circumstances

16 surrounding it and qualified to render an opinion.  Ruzicka Decl., ¶ 13.  Ruzicka claims in his

17 declaration that despite the fact that he did not draft all of it, and even disowns some of it,

18 Exhibit 1195 represents his "mental impressions and thought process regarding legal advice I

19 provided to Fru-Con as my client."

20       Exhibit 1195 was produced by Fru-Con to SMUD about a year ago with no claim

21 of privilege.  This exhibit was presented in the deposition of Fru-Con former employee Ronald

22 Funk who had been designated as the person most knowledgeable on document retention issues,

23 as well as other matters.  At the deposition, although the document did not appear to be

24 privileged, the title did include the word, "law," so SMUD's counsel showed it to Fru-Con's

25 counsel, Ms. Brown, in advance of presenting it.  SMUD claims that Brown did not request

26 additional time to review the document, acknowledged that it did not appear to be privileged, did

1  not claim privilege over it, and did not demand that it be returned to Fru-Con.  At first, Funk was
2  not instructed not to answer questions about the document, and did not invoke the privilege; but
3  counsel later tried to reserve a privilege objection, and stated on the record, "we're not waiving
4  any right to claim privilege or work product from it."  Poulos Decl., Exh. A.  Just before the end
5  of the deposition, Brown stated on the record that she now had been informed by her office that
6  Ruzicka had drafted the document or parts of it, that other parts were drafted at his direction, and
7  that Fru-Con was reserving its right to move to strike the document from the record as well as
8  accompanying testimony by Funk.  At the separate deposition of James Corwin, Fru-Con also
9  instructed this witness not to answer any questions regarding this document.

Exhibit 11 (The Manual)

The 45 page business manual labeled entry 11 in Fru-Con's privilege log has claimed on its behalf – attorney-client privilege.  It is described as a "portion of Fru-con manual regarding 'legal overview' for handling legal matters."  The log does not name an author or recipient, but in meet and confer letters, Fru-Con stated that the document was created by Mr. Ruzicka, Fru-Con's counsel.

Fru-Con claims that document 11 is a portion of an internal company manual wherein Ruzicka gave specific legal advice to employees about how to handle incoming legal matters.  It was distributed to employees "with a need to receive legal guidance," and distributed internally only.  Ruzicka Decl., ¶ 21.  Ruzicka stated it was drafted in 2002, and has been used for all operations of Fru-Con, not just the Cosumnes Power Plant Project.  Despite the lack of annotation of any statement upon which the reader would know the document was confidential attorney-client advice, again, according to Ruzicka, it was intended to be kept confidential and for internal use only.

Standards - Attorney-Client Privilege and Waiver

California law governs privilege matters in this diversity litigation.  First, privileges in California law are narrowly construed in California as their invocation tends to

impair the search for the truth.  McKesson HBOC, Inc v. Superior Court,  115 Cal. App. 4th, 1236, 9 Cal. Rptr. 3d 812, 817 (2004).[3]  And, the party claiming a privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute.  HLC Properties, Ltd. v. Superior Court, 35 Cal. 4th 54, 59, 24 Cal. Rptr. 3d 199, 202 (2005).  In California, communications between a lawyer and client which are intended to be confidential are protected from disclosure.  Cal. Evid. Code § 952 (emphasis added).

> As used in this article, "confidential communication between client and lawyer" means information transmitted *between a client and his or her lawyer in the course of that relationship* and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Second, simply because counsel's name is attached to a document in some capacity does not render it privileged.

> The privilege does not protect "independent facts related to a communication; that a communication took place, and the time, date and participants in the communication."  (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 640, 62 Cal.Rptr.2d 834.)  Further, the privilege "does not protect disclosure of underlying facts which may be referenced within a qualifying communication" (id. at p. 639, 62 Cal.Rptr.2d 834), and it does not extend to individuals who are no more than witnesses to the matter at issue in the litigation. (Martin v. Workers' Comp. Appeals Bd. (1997) 59 Cal.App.4th 333, 345, 69 Cal.Rptr.2d 138.)  "'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney....'  While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.'" (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 397, 15

---

[3] This is not to say that the attorney-client privilege is unimportant – it is important. Korea Data Systems Co. V. Superior Court (Amazing Technologies Corp), 51 Cal. App. 4th 1513, 59 Cal. Rptr. 2d 925 (1997).  However, the existence of the privilege is a means to an end (a fair and just legal system), not an end in itself.  Over assertion of privilege outside of its correct boundaries, like overdoing anything in life, sows the seeds of potential severe retraction.

> Cal.Rptr. 90, 364 P.2d 266.) "[T]ransmission alone, even where the parties intend the matter to be confidential, cannot create the privilege if none, in fact, exists." (Suezaki v. Superior Court (1962) 58 Cal.2d 166, 176, 23 Cal.Rptr. 368, 373 P.2d 432.) Documents that are independently prepared by an attorney "do not become privileged communications ... merely because they are turned over to counsel." (Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 119, 68 Cal.Rptr.2d 844 (Wellpoint).)

2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App.4th 1377, 1388, 7 Cal. Rptr.3d 197, 205 (2003).[4] The dominant purpose of transmission to the attorney must be the rendition of confidential facts, beliefs, questions etc. upon which the client will be seeking advice. If the case were otherwise, business persons with in-house counsel would be instructed (as might seemingly be the case here for several persons) simply to always copy the attorney on every document created so that privilege could be asserted later if necessary.

Third, "[i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." Chicago Title Ins. v. Superior Court, 174 Cal. App.3d 1142, 1151, 220 Cal. Rptr. 507, 514 (1985). The courts have found that the attorney-client privilege did not apply without qualification where the attorney was merely acting as a negotiator for the client (Montebello Rose Co. v Agri. Labor rel. Brd, 119 Cal. App. 3d 1, 32-35, 173 Cal. Rptr. 856, 873-875 (1981), or merely gave business advice (Estate of Perkins v. Bigelow, 195 Cal. 699,

---

[4] In the federal case of In re Gabapentin Patent Litigation, 214 F.R.D. 178, 186 (2003), the common sense rule concerning business communications with counsel was stated even more clearly applicable to the instant situation: "Non-privileged communications or documents forwarded or Cc'd to an attorney: If documents are created for routine business purposes, by non-attorneys, they do not fall within the purview of the work product privilege. Forwarding an e-mail or other such document that fits this description to an attorney does not transform it into the attorney's work product-i.e. a reflection of his 'mental impressions,' or 'legal strategy,'and such documents are not 'created in anticipation of litigation'. Neither can it be said that communications between clients, unrelated to legal issues or advice, fall under the attorney client privilege. Including an attorney on the distribution list of an interoffice memo, Cc'ing numerous people who are ancillary to the discussion, one of whom happens to be an attorney, or forwarding an e-mail several times until it reaches an attorney does not amount to 'attorney client communication.'"

710, 235 P. 45(1925)).

"[I]t is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality [of all documents and discussions]" Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co., 144 F.R.D. 170, 174. "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear. McCormick, Evidence, § 91, pp. 187-88 (Cleary ed. 1972) quoted in re Grand Jury Proceedings, supra, 727 F.2d at 1355." Id.

Finally, a recent discovery order in this case focused on the dual business and legal aspects of documents. Unless it can be said that the dominant purpose of transmitting information to an attorney is the seeking of legal advice, the attorney-client privilege is non-existent. Scripps Health v. Superior Court,109 Cal. App. 4th 529, 533, 135 Cal. Rptr. 2d 126, 128 (2003).

Waiver of the attorney-client privilege occurs when the holder of the privilege "has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege." Cal. Evid. Code § 912; Mitchell v. Superior Court, 37 Cal.3d 591, 601, 208 Cal. Rptr. 886 (1984).

The privilege, under state law, is waived if not claimed at the first opportunity. Mize v. Atchison, T. & S.F.Ry. Co., 46 Cal. App. 3d 436, 120 Cal. Rptr. 787 (1975); citing Kerns Constr. Co. v. Superior Court (Orange County), 266 Cal. App. 2d 405, 72 Cal. Rptr. 74, 77 (1968). In Motown Record Corp. v. Superior Court, 155 Cal. App. 3d 482, 202 Cal. Rptr. 227 (1984), the trial court's ruling that a one day delay in providing a factual basis for the privilege constituted a waiver was found to be an abuse of discretion. The court stated, "[p]laintiffs' final one-day deliquency in service of a detailed and facially competent showing may not be equated

with a total failure to claim the privilege or with a wilfull total refusal, or delay tantamount to total refusal, to provide a competent description of the documents from which a judicial evaluation of the claim may be made." Id. at 492, 234.  However, the sanction to be employed for failure to follow the *federal* rule for failure to adequately claim privilege in a privilege log is a procedural matter, subject to *federal* standards when the litigation is pending in federal court. See Eureka v. Hartford Ins., 136 F.R.D. 179, 182 (n.5) (E.D. Cal. 1991) (assertion of privilege and need for specific privilege logs).  Under federal law, improper assertions of privilege in the privilege log, or an untimely privilege log, may (but not necessarily) result in waiver.  Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana (Kapsner), 408 F.3d 1142 (9th Cir. 2005), Eureka supplies the analysis for determining when a waiver occurs:

> This court believes that an analysis of whether a waiver of important privileges has been effected should be analyzed under the inadvertent waiver standard on a case-by-case basis. [FN10 omitted] The modern trend on waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances.  See, e.g., Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323, 329 (N.D.Cal.1985); Permian Corp. v. United States, 665 F.2d 1214 (D.C.Cir.1981); See, also, Davis v. Fendler, 650 F.2d at 1160 (in assessing the validity of a claim of privilege, the court should consider the context in which such a claim is made).
>
> ***
>
> Under federal law, a waiver of the attorney-client privilege may be effected by implication. Therefore, even the inadvertent disclosure of a privileged communication does not prevent the occurrence of a waiver. See, e.g., Weil, 647 F.2d at 24. In considering all the circumstances that may justify a finding of inadvertent waiver, the Hartford Fire Ins. Co. court examined the following elements: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." Hartford Fire Ins., 109 F.R.D. at 332, citing Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y.1985).

Eureka, 136 F.R.D. at 183-184.

Analysis

No reasonable assertion can be made that Exhibit 1195 is privileged.  The court

8

knows of no case where a hybrid drafted business document (part attorney and part management) could qualify for attorney-client privilege. The court knows of no authority for the proposition that where an attorney disavows creating even a part of the document created in a business setting, that document nevertheless retains attorney-client privilege.

Moreover, Exhibit 1195 is nothing more than a garden variety "how to" manual regarding the administration of contracts, or a specific contract. SMUD correctly points out that this document was meant for distribution to employees below operations manager level because it contains language such as "contact your operations manager," in section 1.02. To demonstrate its general business purpose rather than to render legal advice, SMUD also correctly points to language which states, "work with your fellow employees from the respective disciplines, whether financial, legal or technical, to resolve the problem in an efficient, professional manner to get the most favorable financial result for the Company." Id., section 1.03. There is no indication on the document itself that it was meant to be confidential, nor does the substance of the document itself suggest that it contains attorney-client confidences.[5] It does not contain an author or recipient, but refers only to the term "you" in the body.[6] Attorney Ruzicka's post-hoc rationalizations that he intended the manual to be confidential (or at least those portions he wrote) bespeak a mindset that everything a corporate counsel pens is automatically attorney-client privileged. The law, as addressed above, is certainly otherwise. If this document is attorney-client privileged, then so is the U.S. Attorney's Manual, a document drafted by Department of Justice lawyers and disseminated to its lawyers in the field concerning the do's and dont's of Department policies. Of course, either privilege proposition grossly distorts the

---

[5] Ill advised statements are not tantamount to confidential statements.

[6] At the hearing on this motion, Fru-Con counsel indicated that Daniel Haas testified that the term, "you" in this exhibit referred to him only as the executive in charge of the Industrial Business Unit, and that this document was a draft only. A set forth in footnote 1, this assertion conflicts with Ruzika's intent in drafting the exhibit, as well as the common sense interpretation of its provisions.

parameters of the privilege. It would also lead to abuse where no business document need ever be produced as long as house counsel's name appeared as a potential contributor to the document.[7] The predominant purpose of Exhibit 1195 was training and not to convey confidential legal advice on any specific issue. This Exhibit is not privileged and may be used as appropriate in discovery, and if otherwise admissible as determined by the trial judge, at trial.

The court need not reach the waiver issue in that the document is not privileged.

The court also orders the continued deposition of Mr. Corwin so that questions related to the document may be answered. If Mr. Corwin can truthfully testify that he never saw this document (or one like it), nor was informed of the substance of the Exhibit, so be it. SMUD at least gets to ask the questions.

The same ruling applies to Entry 11, another "how to" manual. This manual also does not have a specified author or recipient. Nothing in the document would appear to be confidential legal advice as opposed to mere training. For the most part, it is simply an index type document designed to be used with an in-house substantive document. It also contains information on company policy regarding record retention and bullet point, very general discussions on issues such as craft unions, or contact with governmental agencies.

Crime-Fraud Exception

In order to alleviate any misconceptions on the applicability of the crime-fraud exception to the attorney client-privilege for future disputes, the undersigned will discuss this issue as raised by SMUD.

Cal. Evid. Code § 956 provides that there is no attorney-client privilege if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud. Cal. Civ. Code § 1709 states:

---

[7] Nor does it matter that the document was only in draft, if that is indeed a fact. The point is that Exhibit 1195 does not represent anything other than a normal, non-confidential business document regardless of who prepared it.

> FRAUDULENT DECEIT. One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377 (1996), quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778.

Under California law, SMUD cites State Farm Fire & Cas. Co. v. Superior Court, 54 Cal. App. 4th 645, 648-49, 62 Cal. Rptr. 2d 834 (1997), for the proposition that an attempted fraud on the court can be sufficient to invoke the crime-fraud exception to the attorney-client privilege. SMUD also cites BP Alaska Exploration, Inc. v. Superior Court, 199 Cal. App. 3d 1240, 1263, 245 Cal. Rptr. 682 (1988), which states that attempt to defraud is sufficient "because section 956 applies where an attorney's services are sought to enable a party to plan to commit a fraud." SMUD asserts deceit by Fru-Con through its instructions in Exhibit 1195 which, under Cal. Civ. Code § 1710, is "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." SMUD interprets Fru-Con's instruction to "MAKE ABSOLUTLY (sic) NO NEGATIVE COMMENTS OR STATEMENTS ABOUT FRU0-COP (sic?), ITS PERFORMANCE OR THE PERFORMANCE OF IT (sic) EMPLOYEES, as an order to refrain from recording evidence.

SMUD's position is overblown, however ill advised from an appearance standpoint the written directive may be. The above directive to Fru-Con employees, by reason of context of the entire document, applies only to its dealings with SMUD or other contractors. The court does not interpret it as a command to hide facts from the courts or investigatory governmental agencies who have a right to specific information. The court does interpret it as a reminder to employees that many opinions/statements in e-mails, memorandums and the like are often better left unsaid, and that Fru-Con employees working on the SMUD project are not

11

authorized to make admissions on behalf of the company.  SMUD's position appears to urge that a company's employees have a duty to become on-the-job adverse investigators of their company with a concomitant duty to record every act of misfeasance or malfeasance.  Rather, the directive is much like the one the undersigned continually received from his mother: if you can't say something nice, don't say anything at all.  Hopefully, Mom was not encouraging her son to commit a crime or fraud with such advice.[8]

CONCLUSION

SMUD's July 12, 2006, Docket Number 219, motion to compel is granted, and Exhibit 1195 and Entry 11 are not attorney-client privileged.  The further deposition of James Corwin shall be scheduled if requested by SMUD, and Fru-Con shall pay for the logistical costs (reporter, videographer (if utilized) and room) associated with the further deposition.

DATED: August 17, 2006

s/s Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:076
frucon.cor-2.wpd

---

[8] In these proceedings, the court is more concerned with the directive that if anything is written down, manipulate the attorney-client privilege by automatically copying in-house counsel.